UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: GLENN RICHARD UNDERWOOD

       Debtor.
_____/

GLENN RICHARD UNDERWOOD,

       Appellant,

v.

PATRICIA SELENT, ET AL.,

       APPELLEES.
_____/

Civil Case No. 15-12563
Honorable Linda V. Parker

Bankr. Case No. 06-55754
Adv. Pro. No. 14-4966
Honorable Thomas J. Tucker

## OPINION AND ORDER

      This matter is before the Court as an appeal from the United States Bankruptcy Court for the Eastern District of Michigan, the Honorable Thomas J. Tucker presiding.  Debtor and Appellant Glenn Richard Underwood ("Underwood") appeals two decisions entered by Judge Tucker in an adversary proceeding Underwood filed against several of his creditors in his Chapter 11 bankruptcy case and the bankruptcy liquidating trustee, Gene R. Kohut ("Liquidating Trustee").  Specifically, Underwood challenges Judge Tucker's December 10, 2014 order granting a motion to dismiss filed by Patricia Selent and Lynda Carto and dismissing the first three counts of Underwood's adversary

complaint. Underwood also challenges Judge Tucker's July 9, 2015 order adjudicating the fourth count of Underwood's complaint, requiring certain property re-deeded to the Liquidating Trustee, and allowing the Liquidating Trustee to sell any of the properties as permitted by the confirmed plan in Underwood's Chapter 11 case, as modified by an October 14, 2008 order. For the reasons that follow, this Court affirms Judge Tucker's decisions.

I.    **Standard of Review**

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Matthews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). The bankruptcy court's conclusions of law are reviewed de novo. *Nuvell Credit Corp. v. Westfall (In re Westfall)*, 599 F.3d 498, 501 (6th Cir. 2010). This means the Court reviews the law independently and gives no deference to the conclusions of the bankruptcy court. *Myers v. IRS (In re Meyers)*, 216 B.R. 402, 403 (B.A.P. 6th Cir.1998). "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply

2

the appropriate standard of review for each part." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993).

## II. Factual and Procedural Background

This bankruptcy matter arises from an Oakland County Circuit Court case that Selent, Carto, and other family members of Underwood (i.e., the defendants in the bankruptcy adversary case, but for the Liquidating Trustee) filed in 2004 against Underwood and Underwood Property Management Company, a sibling partnership that owned and managed numerous real estate properties. *See Underwood v. Carto*, No. 315949, 2014 WL 4263229, at *1 (Mich. Ct. App. Aug. 28, 2014). The 2004 lawsuit resulted in a judgment of $392,752, plus interest, against Underwood and in favor of the plaintiffs (hereafter "Judgment Creditors"). (*Id.*) To protect himself from the judgment while he pursued his state court appellate remedies, Underwood filed a Chapter 11 bankruptcy petition on October 30, 2006.

On July 24, 2007, the bankruptcy court entered an order confirming Underwood's bankruptcy plan. Order, *In re Underwood*, No. 06-55754 (Bankr. E.D. Mich. July 24, 2007), ECF No. 114. The bankruptcy plan provides that the Judgment Creditors possess allowed claims against Underwood "only to the extent that the Judgment Creditors … are deemed to have [] claim[s] against [Underwood] after all appellate rights are exhausted by [Underwood] and the

claims by the Judgment Creditors … against [Underwood] are both final and non-appealable under the laws of the State of Michigan." *Id*. at 2-3. The amount of the claims, the plan states, is in the amount determined by the Michigan courts.[1] *Id*. at 4. The bankruptcy plan requires Underwood to escrow and maintain a balance of no less than $450,000 with Bank of America by May 31, 2008, for payment of the Judgment Creditors' allowed unsecured claims.[2] *Id*. at 3. The plan further requires Underwood to make "[p]ayment to the Judgment Creditors … by the later of: (1) May 31, 2008; or (2) ten (10) days after all appellate rights are exhausted by [Underwood] and the claims by the Judgment Creditors … against [Underwood] are both final and non-appealable under the laws of the State of Michigan ('Disbursement Date')." *Id*.

Pursuant to a stipulation between Underwood and the Judgment Creditors, the bankruptcy plan was modified on October 13, 2008. Stip. & Order, *id*., ECF No. 169. The modified plan *inter alia* reduces the amount of the escrow balance and requires Underwood to execute quit claim deeds to the Liquidating Trustee with respect to the following properties: (a) 6085 and 6185 White Lake Road, White Lake, MI; (b) 9230 Dixie Hwy. (with four lots), Clarkston, MI; (c) 9237 Hillcrest, Clarkston, MI; 11875 Milford, Holly, MI; and (d) 137 Hudson and 158

---

[1] The plan also provides for the payment of interest on any allowed unsecured claim pursuant to Michigan Compiled Laws Section 600.6013.
[2] The order provided for an escrow account with LaSalle Bank, N.A. or its successor or acquirer. Bank of America acquired LaSalle Bank in 2007.

Summit (4 units), Pontiac, MI. *Id*. at 2-3. The modified plan orders the Liquidating Trustee to "hold the quit claim deeds in escrow and not record the same until twenty (20) days after all appellate rights are exhausted by [Underwood] and the claims by the Judgment Creditors … against [Underwood] are both final and non-appealable under the laws of the State of Michigan." *Id*. at 3. The modified bankruptcy plan provides that, after such time, the Liquidating Trustee may record the deeds and "to the extent reasonably necessary … effectuate the sale of such real property in order to satisfy any outstanding obligation to the Judgment Creditors on Appeal or the Liquidating [Trustee]." *Id*.

In June 2008, the Michigan Court of Appeals ruled on Underwood's appeal of the Oakland County Circuit Court judgment. *Carto v. Underwood Prop. Mgmt. Co.*, No. 272747, 2008 WL 2389493 (Mich. Ct. App. June 12, 2008). The court of appeals affirmed the trial court's grant of summary disposition in favor of the Judgment Creditors and against Underwood, but vacated the trial court's damages award. *Id*. The court remanded the matter to the trial court for a recalculation of damages. *Id*.

On remand, the trial court appointed a certified public accountant ("CPA") as an expert to assist it in properly calculating the damages. *Underwood*, 2014 WL 4263229, at *1. Based on the CPA's calculations, the trial court issued a revised judgment of $200,823 against Underwood on November 15, 2010. *Id*.

Underwood filed three unsuccessful motions for the trial court to reconsider its revised judgment and one unsuccessful motion for relief from judgment. *Id.* Underwood appealed the trial court's decisions to the Michigan Court of Appeals, without success as well. *Id.* and n.3

Underwood filed additional lawsuits in the Michigan courts seeking to overturn the Oakland County Circuit Court's judgment. *Id.* In February 2010, he filed a civil complaint against Selent, which the trial court dismissed on summary disposition in favor of Selent on res judicata grounds. *Id.* at *2. The Michigan Court of Appeals affirmed. *Underwood v. Selent*, No. 298312 (Mich. Ct. App. Oct. 20, 2011) (unpublished). The appellate court explained "this is at least the third time that [Underwood] has brought suit against the same defendant." *Id.* The court also stated that, "[e]ven though he is dissatisfied, [Underwood] cannot merely re-label and then couch his assertions in different arguments in repeated attempts to relitigate the same matter hoping for a result he finds more favorable." *Id.*

In December 2012, Underwood sued Carto "generally alleg[ing] that the trial court in the 2004 case ignored facts, improperly appointed a CPA, and used procedures that denied him a fair trial." *Underwood*, 2014 WL 4263229, at *2. Carto moved for summary disposition on res judicata grounds, which the trial court granted with respect to all but one claim (slander) on April 5, 2013. *Id.* The court

6

concluded that Underwood raised or could have raised most of his claims during the 2004 litigation. *Id.* The trial court subsequently granted summary disposition to Carto on Underwood's slander claim. *Id.* Underwood appealed.

On August 28, 2014, the Michigan Court of Appeals affirmed the trial court's decision. *Id.* The court determined not only that res judicata barred Underwood's claims, but that Underwood's appeal was vexatious. *Id.* The court wrote:

> We determine that Underwood's appeal is vexatious because it was taken for the purposes of hindrance and without any reasonable basis for belief that there was a meritorious issue for this Court to determine on appeal. This is the third appeal in which this Court has affirmed the trial court's dismissal of suits related to or based on conduct in the 2004 case on res judicata grounds. And this is the second appeal from a complaint against one of the plaintiffs in the 2004 case.
>
> The panel's decision in *Selent* informs our determination. In *Selent*, Underwood sued Selent, another sibling involved in his 2004 lawsuit, on substantially [the same] claims as he made against Carto in this lawsuit. The trial court dismissed Underwood's suit against Selent on res judicata grounds. Underwood appealed that dismissal, and a panel of this Court affirmed the trial court's dismissal in no uncertain terms. The *Selent* panel explained that res judicata barred Underwood's claims, "for the same reasons clearly and succinctly stated by the previous panel of this court in *In re Estate of Underwood* when [Underwood] brought the case for the second time[.]" The panel further warned Underwood that he could not repeatedly attempt to relitigate the issues in the 2004 case and that his repeated lawsuits wasted judicial resources.

7

> Despite this Court's decision in *Selent*, Underwood filed a new lawsuit against a different sibling involved in the 2004 case. Underwood's suit in this case presents substantially the same allegations against Carto as he presented against Selent: allegations that a panel of this Court painstakingly explained were barred by res judicata. The most reasonable explanation for Underwood's behavior is that he has engaged in it for the purposes of hindrance. Further, Underwood cannot have a reasonable basis for believing that there is a meritorious issue to be determined. This Court has twice explained that res judicata bars all claims related to the 2004 lawsuit. But Underwood explicitly based his December 2012 complaint in this case on Carto's alleged conduct during the 2004 lawsuit.

*Id*. at 4-5 (footnotes omitted). The court of appeals awarded Carto actual damages and expenses for defending against Underwood's appeal and remanded the matter to the trial court, ordering the trial court to assess punitive damages in an additional amount equal to Carto's actual expenses. *Id*. *5.

In the meantime, while Underwood was exhausting all state court avenues for overturning the Oakland County Circuit Court's November 15, 2010 judgment, he initiated the adversary proceedings in the bankruptcy court against the Judgment Creditors and the Liquidating Trustee. Adversary Compl., *Underwood v. Selent*, No. 06-55754 (Bankr. E.D. Mich. filed Sept. 9, 2014), ECF No. 1. In Counts I and II of his adversary complaint, Underwood again attempted to challenge the validity of the state court's judgment, claiming the trial judge violated his due process rights and improperly calculated the Judgment Creditors' damages. In Count III,

8

he sought payment from the escrowed funds and claims the trial court took approximately $4,500 from those funds to pay the Judgment Creditors' share of the court appointed CPA fees in violation of the automatic stay in the bankruptcy proceedings. Finally, in Count IV, Underwood alleged that the Liquidating Trustee wrongfully conveyed three properties owned by Underwood and his wife to the Judgment Creditors: 6085 and 6185 White Lake Road, White Lake, Michigan 48383 and 9230 Dixie Hwy., Clarkston, Michigan 48343.

Selent and Carto filed a motion to dismiss the adversary complaint. The Liquidating Trustee filed a motion to dismiss or, in the alternative, for summary judgment. Judge Tucker held a hearing on the motions on December 10, 2014, and at the close of the hearing, dismissed with prejudice Counts I through III of the adversary complaint against not only Selent and Carto, but all of the Judgment Creditors who Underwood named as defendants in his adversary complaint. 12/10/14 Hr'g Tr., *Underwood v. Selent*, No. 14-04966 (Bankr. E.D. Mich.), ECF No. 80. Judge Tucker denied without prejudice the Liquidating Trustee's motion and thus left pending only Count IV of the adversary complaint. *Id*. Judge Tucker entered a written order on the same date. *Order*, *id*. (Bankr. E.D. Mich. Dec. 10, 2014), ECF No. 65.

With respect to his dismissal of Counts I and II of the adversary complaint, Judge Tucker reasoned that Underwood essentially was challenging the November

9

2010 state court judgment for which he exhausted all state court appeals or rights of appeal without success. Judge Tucker first explained that the bankruptcy plan, as modified, clearly provided the Judgment Creditors with allowable claims for the amount of the judgment as determined based on the outcome of the state court litigation. Judge Tucker found the state court judgment to be a final, non-appealable decision. Judge Tucker further held that the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel barred Underwood from re-litigating the correctness of that judgment in the bankruptcy proceedings.

With respect to Underwood's request for a return of escrowed funds in Count III of his adversary complaint, Judge Tucker concluded that he is not entitled to those funds. As Judge Tucker explained, the modified bankruptcy plan required Underwood to deposit funds into an escrow account to be held until payment to the Judgment Creditors within ten days after the Disbursement Date (i.e., the date Underwood exhausts his appellate rights and the claims of the Judgment Creditors against Underwood become final and non-appealable under Michigan law). Judge Tucker further found that the modified plan provides for a return of the escrowed funds to Underwood only if the Judgment Creditors are deemed not to have allowed claims on appeal (or to the extent those claims are less than the escrowed amount).

Before Underwood filed his adversary complaint, the judgment against Underwood and in favor of the Judgment Creditors became final and non-appealable and had not been paid. As such, Judge Tucker concluded that Underwood was not entitled to have the escrow proceeds (including any funds held in escrow with the Oakland County Circuit Court) returned to him, as he requested in Count III.[3] Rather, Judge Tucker held, in accordance with the modified bankruptcy plan, those proceeds had to be used to pay down the unsatisfied state court judgment.

Finally, Judge Tucker found no merit to Underwood's claim in Count III that the state circuit court judge violated the automatic bankruptcy stay by taking approximately $4,500 from the escrowed funds to pay the Judgment Creditors' share of the court appointed CPA's fees. As Judge Tucker explained, the funds were removed after Underwood's Chapter 11 bankruptcy case was closed and thus when there was no bankruptcy stay in effect. Moreover, the state court had determined that the funds did not belong to Underwood. To the extent Underwood

---

[3] In addition to the funds Underwood was required to deposit in a Bank of America escrow account pursuant to the modified bankruptcy plan, funds were held in escrow in the Oakland County Circuit Court. The modified bankruptcy plan required Underwood to deposit the latter funds into the Bank of America escrow account. Underwood did not maintain the required balance in the Bank of America escrow account and the funds escrowed with the state court had not been transferred to Bank of America. Rather than having the money held in escrow with the state court paid to Underwood and then requiring him to deposit those funds into the Bank of America account, Judge Tucker ordered those funds paid directly to the Judgment Creditors.

was challenging that determination, Judge Tucker advised that the dispute needed to be adjudicated in the state court rather than the bankruptcy court.[4]

The Liquidating Trustee subsequently renewed his motion for summary judgment with respect to Count IV of the adversary complaint and Underwood filed several motions, which the bankruptcy court construed as motions for partial summary judgment as to Count IV.[5] Judge Tucker held a hearing with respect to the motions on July 8, 2015, at which time he granted in part and denied in part the Liquidating Trustee's motion and denied Underwood's motions. 7/8/15 Hr'g Tr., *Underwood v. Selent*, No. 14-04966, (Bankr. E.D. Mich. filed Aug. 19, 2015), ECF No. 200. Judge Tucker entered a written order on July 9, 2015. Order, *id.*, (Bankr. E.D. Mich. July 9, 2015), ECF No. 185.

Judge Tucker concluded that the Liquidating Trustee lacked the authority under the modified bankruptcy plan to transfer the following three properties directly to the Judgment Creditors: 6085 and 6185 White Lake and 9230 Dixie Highway (Lots 81 and 82). Based on Underwood's indication at the motion

---

[4] On January 14, 2015, Underwood filed a notice of appeal as to Judge Tucker's December 10, 2014 decision, which was assigned to the undersigned as Civil Case No. 15-10155. This Court dismissed the appeal on September 21, 2015, concluding that it was filed beyond the fourteen-day time limit for filing a bankruptcy appeal set forth in Rule 8002 of the Federal Rules of Bankruptcy Procedure. Order, *Underwood v. Selent*, No. 15-10155 (E.D. Mich. Sept. 21, 2015), ECF No. 17.

[5] In his motions, Underwood sought to have the properties at issue in Count IV deeded directly to him.

hearing that he was not pursuing damages as a result of the wrongful transfer, *see* 7/8/15 Hr'g Tr. at 57, Judge Tucker concluded that the best resolution would be to require the Judgment Creditors to transfer the properties back to the Liquidating Trustee and then allow the Liquidating Trustee to perform the duties required of him with respect to the properties in accordance with the modified bankruptcy plan. Specifically, the plan grants the Liquidating Trustee "the power to sell the Real Property in his reasonable business judgment" so as "to satisfy any outstanding obligation to the Judgment Creditors or the Liquidating Agent." Order, *In re Underwood*, No. 06-55754 (Bankr. E.D. Mich. Oct. 13, 2008), ECF No. 169 at 3.

Judge Tucker deemed the order adjudicating Count IV of the adversary complaint (the only count remaining) to be a final judgment concluding the adversary proceeding. Order, *Underwood v. Selent*, No. 14-04966 (Bankr. E.D. Mich. July 9, 2015), ECF No. 185.

On July 10, 2015, Underwood filed a notice of appeal with respect to Judge Tucker's December 10, 2014 and July 9, 2015 decisions. He moved for a stay of the bankruptcy proceedings pending appeal, which the bankruptcy court denied on

July 23, 2015. Underwood renewed his motion to stay in this Court, which the Court denied on September 30, 2016.[6] (ECF No. 14.)

### III. Applicable Law and Analysis

On appeal, Underwood essentially argues that the bankruptcy court should not have accepted the state court judgment as the amount owed to the Judgment Creditors because the judgment was based on an incorrect accounting and pursuant to proceedings that violated Underwood's due process rights. The bankruptcy plan provides the Judgment Creditors with allowed claims against Underwood in the amount determined by the Michigan courts after Underwood exhausts all appellate rights and the claims are both final and non-appealable under Michigan law.[7] Underwood fully exhausted his rights to appeal the Oakland County Circuit Court's judgment on remand, without success. In fact, the Michigan Court of Appeals concluded that Underwood's repeated attempts to litigate the merits of the judgment were vexatious. Underwood cannot use the bankruptcy court proceedings to overturn the state court's judgment. Judge Tucker correctly

---

[6] Subsequent to Underwood's appeal, proceedings continued in the bankruptcy court with respect to the sale of the properties. On May 17, 2016, Underwood filed a motion for leave to appeal the bankruptcy court's decision as to one of those properties, which has been filed as Civil Case No. 16-11752 and assigned to the undersigned. The Court will issue a separate decision with respect to that motion.
[7] As Judge Tucker pointed out at the December 10, 2014 hearing, the bankruptcy plan, as modified, remains in full force and effect.

concluded that the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel barred Underwood's challenges to that judgment.

"Federal courts do not stand as appellate courts for decisions of state courts." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). "The *Rooker-Feldman* doctrine 'prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision.' " *Id.* (quoting *Luber v. Sprague*, 90 F. App'x 908, 910 (6th Cir. 2004)). "Federal courts' 'authority to review a state court's judgment' is vested 'solely in the Supreme Court.' " *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)) (brackets omitted); *see also* 28 U.S.C. § 1257. Nevertheless, "the *Rooker-Feldman* doctrine does not bar 'a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.' " *Id.* (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).

As the Supreme Court clarified in *Exxon Mobil*, "[t]he *Rooker-Feldman* doctrine … is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments." 544 U.S. at 284.

15

The Sixth Circuit subsequently explained that "[i]n post-*Exxon* analysis, we have distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010). The "pertinent inquiry" after *Exxon Mobil*, the Sixth Circuit advises, "is whether the 'source of the injury' upon which [the] plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment." *Id.* (quoting *McCormick v. Braverman*, 451 F.3d 382, 394-95 (6th Cir. 2006)).

As Judge Tucker pointed out during the December 10, 2014 motion hearing, in the adversary proceeding Underwood was not seeking to modify the bankruptcy plan so the amount of the Judgment Creditors' claims would not be based on the final, non-appealable state court judgment.[8] Rather, Underwood was asking the bankruptcy court to declare the Oakland County Circuit Court's judgment void because the state court violated his due process rights and erred in calculating damages. This directly implicates *Rooker-Feldman* concerns. Like the plaintiffs in *Rooker* and *Feldman*, Underwood sought review and rejection of the state court judgment. However, even if the *Rooker-Feldman* doctrine did not preclude the

---

[8] Judge Tucker explained that if Underwood was seeking such relief, he had to do so in the Chapter 11 case by moving to modify the bankruptcy plan.

16

relief Underwood sought in the bankruptcy court adversary proceeding, preclusion law would.

"The Full Faith and Credit Act … requires [a] federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.' " *Exxon Mobil*, 544 U.S. at 293 (quoting *Parson Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986)).  Principles of estoppel apply in bankruptcy proceedings.  *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).  Judge Tucker relied on two preclusion doctrines: collateral estoppel and res judicata.

In Michigan, the two doctrines serve largely the same purpose.  Michigan courts have held that "[t]he doctrine of collateral estoppel must be applied so as to strike a balance between the need to eliminate repetition and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims." *Storey v. Meijer, Inc.*, 429 N.W.2d 169, 171 (Mich. 1988).  Similarly, "[t]he doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Bryan v. JPMorgan Chase Bank*, 848 N.W.2d 482, 485-86 (Mich. Ct. App. 2014) (internal quotation marks and citation omitted).

As the Michigan Supreme Court has explained, "res judicata bars a subsequent action between the same parties when the evidence or essential facts

17

are identical." *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999). "The Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair v. State of Michigan*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Dart*, 597 N.W.2d at 88). Res judicata bars a subsequent action when (1) an earlier action "was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second action was, or could have been, resolved in the first." *Id*. Collateral estoppel is a subset of res judicata.

"Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that proceeding." *Leavy v. Orion Twp.*, 711 N.W.2d 438, 441 (Mich. Ct. App. 2006) (citing *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990)). The following requirements are required under Michigan law for collateral estoppel to apply:

> 1) the parties in both proceedings are the same or in privity,
>
> 2) there was a valid, final judgment in the first proceeding,
>
> 3) the same issue was actually litigated in the first proceeding,

> 4) that issue was necessary to the judgment, and
>
> 5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue.

*United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (citing *Gates*, 452 N.W.2d at 630-31).

The validity of the Oakland County Circuit Court judgment was fully litigated (several times) in the Michigan courts in proceedings involving Underwood and one or more of the Judgment Creditors, who are in privity.[9] Underwood had full and fair opportunities to litigate his challenges to the judgment in the state court proceedings. The Michigan courts upheld the judgment. As such, as Judge Tucker correctly concluded, Underwood was barred from utilizing the bankruptcy proceedings to litigate the issue again. Applying these principles of estoppel are particularly appropriate here where the Michigan Court of Appeals ruled that Underwood's continued efforts to overturn the judgment have become vexatious.

---

[9] As the Michigan Supreme Court has defined:

> To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation.

*Adair*, 680 N.W.2d at 396 (internal quotations marks and citations omitted).

## IV. Conclusion

In short, the Court holds that the bankruptcy court did not err in concluding that Underwood's adversary claims were barred by the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel.

Accordingly,

**IT IS ORDERED**, that the bankruptcy court's December 10, 2014 and July 9, 2015 decisions are **AFFIRMED**.

                                                s/ Linda V. Parker
                                                LINDA V. PARKER
                                                U.S. DISTRICT JUDGE

Dated: March 13, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 13, 2017, by electronic and/or U.S. First Class mail.

                                                s/ Richard Loury
                                                Case Manager